1  VERNA WEFALD
   State Bar No. 127104
2  65 North Raymond Ave. # 320
   Pasadena, California 91103
3  Telephone: (626) 577-2658
   Facsimile: (626) 685-2562
4  Email: verna@vernawefald.com

5  Attorney for Petitioner Jaime Garcia

6              UNITED STATES DISTRICT COURT

7              CENTRAL DISTRICT OF CALIFORNIA

8

9  JAIME GARCIA,                    ) Civ. No.  14-1319-BRO (JPR)
                                    )
10            Petitioner,           ) **PETITIONER'S REPLY TO**
                                    ) **RESPONDENT'S OPPOSITION TO**
11     v.                           ) **HIS MOTION TO STAY AND ABEY**
                                    )
12  W.L. MONTGOMERY, Warden,        )
                                    )
13            Respondent.           )
   ─────────────────────────────────)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Introduction and Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Relevant Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.    Los Angeles County Superior Court. . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.    Court of Appeal, Second Appellate District.. . . . . . . . . . . . . . . . . . 5

    3.    California Supreme Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    4.    United States District Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    5.    California Supreme Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    6.    United States District Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Nicholas Ramirez' Body is Discovered. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Ramirez Attended a Party at Garcia's House. . . . . . . . . . . . . . . . . . . . . . . . 9

    Matthew Foust. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    Forensic Evidence Implicates Bernardino and Esparza but
    Not Garcia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

GARCIA CAN SHOW GOOD CAUSE TO STAY AND ABEY THE FEDERAL
PETITION AND RETURN TO STATE COURT TO EXHAUST THE *CHIU*
ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     The Law Regarding Stay and Abey Procedure. . . . . . . . . . . . . . . . . . . . . . . 12

     Respondent Relies on Unpublished District Court Decisions to
     Challenge Garcia's Good Cause Showing. . . . . . . . . . . . . . . . . . . . . . . . . . 13

     Ground Two is Meritorious.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     Grounds Three through Five are No Impediment to the Stay and
     Abeyance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

DECLARATION OF VERNA WEFALD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ii

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Barno v. Hernandez,* 2009 U.S. District LEXIS 69841 (S.D. Cal. 2009). . . . . . . 13

*Blake v. Baker,* 745 F.3d 9977 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

*Bounds v. Smith,* 430 U.S. 817 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Brecht v. Abrahamson,* 507 U.S. 619 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dilley v. Gunn,* 64 F.3d 1365 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Estelle v. McGuire,* 502 U.S. 62 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hughes v. State Board of Corrections,* 800 F.2d 905 (9th Cir. 1986). . . . . . . 13, 14

*Jackson v. Roe,* 425 F.3d 654 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 12

*James v. Pliler,* 269 F.3d 1124 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mendoza v. Carey,* 449 F.3d 1065 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . 3

*Murray v. Cate,* 2010 U.S. District LEXIS 100966 (E.D. Cal. 2010). . . . . . . . . 14

*People v. Chiu,* 59 Cal.4th 155 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

iii

*Rhines v. Weber,* 544 U.S. 268 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*Walker v. Gomez,* 370 F.3d 969 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Whalem/Hunt v. Early,* 233 F.3d 1146 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 2

*Wooten v. Kirkland,* 540 F.3d 1019 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

California Penal Code,

§ 187. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 207. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§ 12022(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VERNA WEFALD
State Bar No. 127104
65 North Raymond Ave. # 320
Pasadena, California 91103
Telephone: (626) 577-2658
Facsimile: (626) 685-2562
Email: verna@vernawefald.com

Attorney for Petitioner Jaime Garcia

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAIME GARCIA,                        ) Civ. No.  14-1319-BRO (JPR)
                                     )
              Petitioner,            ) **PETITIONER'S REPLY TO**
                                     ) **RESPONDENT'S OPPOSITION TO**
       v.                            ) **HIS MOTION TO STAY AND ABEY**
                                     )
W.L. MONTGOMERY, Warden,             )
                                     )
              Respondent.            )
_____    )

         Petitioner Jaime Garcia, by counsel, respectfully submits this reply to

Respondent's opposition (CR 42) to his motion to stay and abey (CR 39).[1]

**Introduction and Summary of Argument**

         Garcia can show good cause for failing to exhaust ground two vis-a-vs

*People v. Chiu*, 59 Cal.4th 155 (2014) because he is illiterate and dependent on

jailhouse lawyers to assist him.  See *Blake v. Baker*, 745 F.3d 9977, 982 (9th Cir.

2014) (petitioners can show good cause to obtain stay and abeyance if they have a

reasonable excuse supported by sufficient evidence).

         Respondent does not dispute that Garcia is functionally illiterate.  In his

motion for appointment of counsel filed on February 13, 2014 (CR 3) Garcia stated

that he only had a fifth grade education and required "help reading, understanding,

---

[1]  "CR" stands for Clerk's Record in federal court.  "CT" stands for Clerk's
Transcript in state court.  "RT" stands for Reporter's Transcript. "LD" stands for
Lodged Document.

and filing his legal briefs." (CR 3 at 1; see also CR 39 at 3 [same].)  He is obviously relying totally on the assistance of several different jailhouse lawyers as the handwriting in the pleadings and their exhibits varies.  Compare e.g. CR 3 (motion to appoint counsel) with CR 10 (status report), CR 18 (status report), CR 20 (status report), CR 22 (status report), CR 35 (request for extension of time), and CR 39 (motion for stay and abeyance).  See also Declaration of Verna Wefald.

Nor does Respondent dispute that ground two, which he seeks now to exhaust under *People v. Chiu*, 59 Cal.4th 155 (2014) is meritorious.  Indeed, Respondent concedes that the codefendants should be allowed to stay and abey their federal petitions in order to exhaust this claim.

Respondent contends, however, that because Garcia filed an exhaustion petition in the California Supreme Court on September 29, 2014, which was only three months after the California Supreme Court decided *Chiu* on June 2, 2014, he should have raised this issue the first time around.

If this Court should find that Garcia's illiteracy does not establish good cause by itself, then a continuance must be granted and counsel must be authorized to visit Garcia at Calipatria State Prison, in order to  obtain further information in support of his motion to stay and abey.  Because Garcia is illiterate, much of the facts counsel would like to know cannot be obtained by correspondence or over the telephone.

Garcia is also entitled to discovery and an evidentiary hearing (if necessary) on the state of the law library at Calipatria.  *Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000) (case remanded for factual development on whether law library in prison had materials describing the AEDPA and the statute of limitations in order to determine whether he was entitled to equitable tolling for missing the one year deadline). *See also Dilley v. Gunn*, 64 F.3d 1365, 1367 (9th Cir. 1995) (district court ordered Calipatria to upgrade its law library after finding it so inadequate that it violated constitutional right of access to the courts under *Bounds v. Smith*, 430

U.S. 817 (1977); case remanded to district court to determine if warden's transfer of inmate was happenstance or deliberate in order to hinder appellate review); *Mendoza v. Carey*, 449 F.3d 1065, 1071 (9th Cir. 2006) (evidentiary hearing required as to whether state prison law library had no Spanish language materials notifying non-English speaking inmate about statute of limitations so as to warrant equitable tolling).

In regard to the law library at Calipatria, Garcia is entitled to discovery at least as to the following: (1) when, *if ever*, the *Chiu* decision was obtained by the law library and how readily available it was to inmates; (2) how often and for how many hours the law library was accessible to inmates, particularly those who were acting as jailhouse lawyers; (3) and when the jailhouse lawyers were actually able to use the law library (and for how long) to assist Garcia.

There is other information that would be important to know before a motion to stay and abey can be denied, e.g. what legal materials Garcia actually had in his possession – and when – in order to confer with jailhouse lawyers.  For example, his legal documents were seized in a cell search on April 8, 2015. (CR 35.) This may not have been the first time this happened.  Moreover, apart from some of the transcripts and appellate briefs (CR 39 at 2) it is unknown exactly what legal materials Garcia has had in possession since the conclusion of his direct appeal.

Further, discovery would be needed as to when the prison was on lockdown preventing anyone from using the law library and/or conferring with a jailhouse lawyer.  "Calipatria State Prison has a history of significant racial tension and violence." *Walker v. Gomez*, 370 F.3d 969,  971 (9th Cir. 2004).

**Relevant Procedural History**

   **1.    Los Angeles County Superior Court**

On June 25, 2008, Petitioner Jaime Garcia and codefendants Javier Esparza and Claudio Bernardino were charged by information with the murder of Nicholas Ramirez in (count one) [Calif. Penal Code § 187].  As to count one, it was

1  further alleged that a principal was armed. [§ 12022 (a)(1)].   In count two, all three
2  defendants were charged with kidnapping Ramirez. [§ 207(a)].

3          The prosecution's case depended on the testimony of immunized
4  witness Matthew Foust who told numerous different stories to police prior to trial.
5  See detailed statement of facts, infra.

6          In closing argument, the prosecution did not specify who it believed was
7  the actual shooter. (14 RT 3358-3402.)  It contended that all three defendants were
8  guilty of first degree murder based on five different vicarious liability theories:  (1)
9  aiding and abetting (2 CT 339 [CALCRIM 400]); natural and probable consequence
10 of aiding and betting (2 CT 340-342 [CALCRIM 403]); conspiracy (2 CT 342-343
11 [CALCRIM 416]); liability for a co-conspirator's acts or natural and probable
12 consequence of a conspiracy (2 Ct 343-344 [CALCRIM 417]); and felony murder
13 with kidnapping as the target offense (2 CT 347-348 [CALCRIM 540b]).  They were
14 also instructed on second degree murder as a lesser included offense.  (14 RT 3351-
15 3352.)

16         During deliberations, the jury asked the following question:
17         "Clarification on item three, age 20.  If a defendant did not personally
18         commit kidnapping, then what did he, slash, she do?  Section 540(b)."
19         (14 RT 3632.)
20 The prosecutor said it sounded like they were stumped on aiding and abetting and
21 requested clarification.    All three defense counsel objected to any additional
22 instructions.  The court said it would instruct the jurors "something to the effect of"
23 "the jury is to determine what any defendant" or "it is up to the jury to determine
24 what a defendant did or did not do." (14 RT 3635.)

25         On January 21, 2011, all three defendants were convicted of first degree
26 murder and the special allegation that a principal was armed was found true.  (14 RT
27 3638-3641.) As the jurors were not asked to return a special verdict, the prosecutor
28 conceded it was not possible to tell which theory the jurors believed. (14 RT 3920.)

By the same token, it was not possible to tell which defendant was deemed to be a principal, an aider or abettor, or conspirator.

On March 22, 2011, all three defendants were sentenced to 26 years to life on count one. The court imposed 8 years on count two but stayed the sentence under Penal Code section 654. (14 RT 3922.)

**2.      Court of Appeal, Second Appellate District**

On direct appeal, Garcia filed an opening brief raising two issues (LD No. 3):

I.    The trial court's instruction on conspirator natural and probable consequence liability permitted the jurors to return a legally insufficient verdict in violation of federal due process because it failed to demand a finding on the essential element that a coconspirator actually committed a charged crime in furtherance of the conspiracy;

II.   The trial court's instructions on three of the five theories of vicarious liability permitted the jurors to return a legally inadequate verdict of murder one in violation of federal due process because they did not demand adequate findings about deliberation.

Garcia also joined in all arguments filed by his codefendants. (LD No. 4 at 8.)

Bernardino raised the following issues on direct appeal (LD No. 2).[2]

I.    The trial court erred in denying appellant's Wheeler/Batson motion as the prosecutor's use of peremptory challenges to excuse two African American jurors reflected group bias;

---

[2]  Counsel does not have Esparza's opening brief.

II.   The trial court erred prejudicially when it instructed the jury on aider and abettor liability because it did not inform the jury that an aider and abettor can be guilty of a lesser crime than the perpetrator;

III.   The trial court violated appellant's Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process when it failed to instruct the jury sua sponte that in order for appellant to be guilty of first degree murder it had to determine that first degree murder was the natural and probable consequence of the target crimes;

IV.   Appellant was deprived of his Fourteenth Amendment right to due process and his Sixth Amendment right to jury trial by the failure of the trial court to properly instruct the jury that Matthew Foust was an accomplice as a matter of law;

V.   The trial court prejudicially erred in admitting gruesome and prejudicial crime scene photographs of the decedent.

On August 17, 2012, the Court of Appeal affirmed the convictions in an unpublished decision. (LD No. 7.)

**3.   California Supreme Court**

On September 21, 2012, Garcia filed a petition for review (LD No. 8),[3] joining in his codefendants' petitions, and raising the following issues:

I.   Reviewing courts are incorrectly finding that the preamble of an instruction cures the omission of essential elements in the body's specific delineation of the elements required for criminal liability (re natural and probable consequences instruction);

---

[3]  Counsel does not have the codefendants' petitions for review.

II.    Reviewing courts are improperly deeming a witness credible and reliable as a matter of law contrary to the state of the record in order to hold there was no sua sponte duty to instruct on lesser offenses (re aiding and abetting, natural and probable consequences instructions).

On November 26, 2012, the California Supreme Court denied the petitions for review stating: "The petitions for review are denied without prejudice to any relief to which defendants might be entitled after this court decides *People v. Chiu*, S202724." (LD No. 9.)

### 4.    United States District Court

On February 13, 2014, Garcia timely filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 raising the two issues filed in the petition for review to the California Supreme Court. (CR 1.)  On February 13, 2014, Garcia filed a motion to stay and abey while he returned to state court to exhaust additional claims. (CR 4.)  The court stayed the proceedings and Garcia filed status reports regarding the state court proceedings.  (CR 8, 13-24.)

### 5.    California Supreme Court

On September 29, 2014, after petitions filed in the lower courts were denied, Garcia filed a petition in the California Supreme Court raising the following issues: (1) trial court violated petitioner's 14th amendment right to a fair trial by denying petitioner the right to present evidence in his defense (dog scent pad taken from victim's car showed Garcia was never in the car); (2) trial court violated petitioner's 6th amendment right to a fair trial by prohibiting petitioner from asking certain questions that were important for petitioner's defense (re handgun); and (3) appellate attorney failed to provide effective assistance of counsel in violation of petitioner's 6th amendment right (for failing to raise the first two claims).

On November 25, 2014, the California Supreme Court denied the petition stating: "The petition for writ of habeas corpus is denied.  (See *People v.*

*Duvall* (1995) 9 Cal.4th 464, 474; *In re Swain* (1949) 34 Cal.2d 300, 304.)" The citations to *Duvall* at 474 and *Swain* at 304 mean that the court found the allegations to be conclusory.

### 6.    United States District Court

Returning to federal court, on February 13, 2015, Garcia filed a first amended 2254 petition raising the two claims from the original petition and the three claims from the exhaustion petition. (CR 26.) On March 26, 2015, Respondent filed a motion to dismiss the first amended petition asserting that grounds three, four, and five were unexhausted because they were not pled with sufficient particularity in the state supreme court. Ground two was also unexhausted because of the intervening decision by the California Supreme Court in *People v. Chiu*, 59 Cal.4th 155, 325 (2014. (CR 33.)

On May 18, 2015, Garcia filed a motion to stay and abey the proceedings so that he could exhaust ground two in light of the *Chiu* decision. (CR 39.) On June 25, 2015, Respondent filed an opposition. (CR42.) Respondent asserted that Garcia failed to show good cause for failing to raise the *Chiu* claim in his previous exhaustion petition. The *Chiu* decision was handed down on June 2, 2014, before he filed his exhaustion petition in the California Supreme Court. Respondent also asserted that a stay was unwarranted as grounds three through five were plainly meritless. See further discussion infra.

**Relevant Facts**

**Nicholas Ramirez' Body is Discovered**

On September 18, 2006, police found a bullet ridden abandoned Honda Prelude parked on a dirt road near a desert field. The body of Nicholas Ramirez was inside the trunk. He had bullet wounds to the left side of his head and buttocks; his hands were bound behind his back with a chain; and there was a cloth and tape covering his mouth. (5 RT 1023-1027, 7 RT 1507-1516.) The autopsy revealed that

Ramirez had twice the legal limit of alcohol as well as cocaine in his system.  The cause of death was multiple gunshot wounds.  (7 RT 1610-1630.)

Nine .40 caliber casings were found next to Ramirez' car, which were determined to have been fired from the same gun.  (6 RT 1225, 1262-1264.)  The casings matched casings from a gun that was stolen from James Wilson on September 26, 2005.  Blood on the wall at Wilson's home was determined to be Garcia's blood.  (6 RT 1308, 10 RT 2435.)  The murder weapon was never recovered.

Jesse Ramirez, Nicholas Ramirez' brother, said that he saw Garcia with .40 caliber gun but not the night of the party.  (LD No. 3 at 8, citations.)

Michael Olivas told police that he acted as a lookout for Garcia on the Wilson robbery and that Garcia cut his hand when he broke in.  In court, however, Olivas denied making those statements.  Garcia's girlfriend Laura Acosta told police that Garcia cut his hand.  She told them this after the police threatened to take her son away.  (LD No. 3 at 3.)

**Ramirez Attended a Party at Garcia's House**

Ramirez had attended a birthday party for his brother Jesse at Garcia's home on September 15, 2006.  The party was also attended by Ramirez's sister Yvonne, his friend Tasha Wilmes, Jesse's friend Martin Guzman, Garcia's friend Matthew Foust, Garcia's girlfriend Laura Acosta, and codefendants Claudio Bernardino and Javier Esparza, who is Garcia's brother.  People consumed cocaine and alcohol at the party.

At some point that night Esparza punched Jesse.  Garcia and Ramirez took Jesse outside to calm him down but things remained tense.  Jesse left the party about 7:00 a.m. with Guzman, who slashed the tires of Garcia's car on the way out.  (LD No. 3 at 4.)

**Matthew Foust**

Garcia's involvement in Ramirez' murder was based entirely on the immunized testimony of Matthew Foust.   Foust's story is as follows:

Foust, who used to live in California, drove his Buick from Arizona, where he now lived, to purchase rims from Garcia.  He arrived at the home of Garcia and Esparza around 2:00 a.m. and slept on the floor until he woke up at 6:00 a.m. Foust and Garcia drove to Acosta's home to get the rims.  (8 RT 1825-1856, 11 RT 2538.)  When they returned to Garcia's house, Garcia noticed his tires were slashed and some stereo equipment was missing.  Garcia thought the culprits were "the guys from last night." (LD No. 3 at 4.)

Foust said that Garcia got a semi automatic 9 mm or 40, and that Esparza was waiving a .45.  Garcia told Foust to take him to find the persons responsible.  Foust drove Garcia and Esparza to pick up a "short stocky guy" (later identified as Cesar Reyes) and the four of them went to Ramirez's house.  They spotted him leaving in his car and followed him to a gas station.  At the gas station, Garcia jumped in Ramirez' car and everyone then drove to Bernardino's house.  (LD No. 3 at 4-5.)

Inside Bernardino's house, Garcia and Reyes beat Ramirez while demanding to know where their stuff was.  Bernardino told them to take Ramirez to the garage because they were getting blood on the carpet.  Inside the garage, Garcia tied Ramirez to a chair.  When Ramirez said "I want to die, just take my life," Garcia gagged him.  Reyes beat him with a pipe.  Bernardino might have beaten him also. Esparza had the gun.  (LD No. 3 at 5.)  When Garcia said he was going to blast Ramirez, Bernardino said not to do it there, but to take him to the desert. Garcia made Ramirez walk to his own car and get in the trunk.  (LD No. 3 at 5 .)

Garcia dropped Reyes off and then drove Ramirez' car to the desert while Foust and Esparza followed.  At one point, Garcia stood next to Esparza with a gun in his hand over the trunk.  Foust's view was obstructed and he looked away.

Next Foust heard some gunshots.  When he looked up he saw Garcia in the back seat of Ramirez' car and heard more shots.  (LD No. 3 at 5.)

After the shooting, Foust drove Garcia and Esparza to his home in Arizona.  They stopped at Garcia's house on the way to pick up the rims.  Garcia threatened Foust not to tell anyone.  (LD No. 3 at 7.)

Foust was interviewed several times by law enforcement.  He changed his story every time he spoke to them.  He also interchanged the roles of Garcia and Esparza in his various accounts.  (LD No. 3 at 7.)

After being contacted by law enforcement, Foust said Garcia visited him in Arizona again and the two drove to Hollywood to party.  Garcia never threatened him.  (LD No. 3 at 7.)

Foust implicated Garcia after law enforcement told him he was no longer a target of the investigation.  Detective Eddie Brown confirmed that Foust repeatedly changed his story and fingered Garcia after they served a warrant on him.  (LD No. 3 at 7.)

**Forensic Evidence Implicates Bernardino and Esparza but Not Garcia**

Bernardino's prints were discovered on Ramirez' car.  No prints belong to Garcia were discovered.  Esparza's genetic material was found on the passenger door handle.  Reyes' genetic material was discovered on the gag in Ramirez' mouth.  (LD No. 3 at 6.)

Ramirez's genetic material was discovered in bloodstains on Bernardino's carpet and floor. (LD No. 3 at 6.)

Bernardino fled to Mexico sometime after the murder.  He was arrested in Texas six months later.  (13 RT 3051.)

1  **GARCIA CAN SHOW GOOD CAUSE TO STAY AND ABEY THE FEDERAL**
2  **PETITION AND RETURN TO STATE COURT TO EXHAUST THE *CHIU***
3  **ISSUE**

4       **The Law Regarding Stay and Abey Procedure**

5       In *Rhines v. Weber,* 544 U.S. 268, 276 (2005) the Supreme Court
6  approved the stay and abeyance procedure for mixed petitions.  The court cautioned
7  that it should not be employed too frequently so as to undermine the objective of
8  finality by delaying the resolution of federal proceedings.  "For these reasons, stay
9  and abeyance should be available only in limited circumstances." *Id*. at 277. "[S]tay
10  and abeyance is only appropriate when the district court determines there is good
11  cause for the petitioner's failure to exhaust his claims in state court." *Id*.  In capital
12  cases, a stay should not be indefinite to prolong incarceration and avoid the death
13  sentence.  *Id.* at 277-278.

14       A district court would abuse its discretion to deny a stay and abey
15  application "if the petitioner had good cause for his failure to exhaust, his
16  unexhausted claims are potentially meritorious, and there is no indication that the
17  petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 78.

18       In *Jackson v. Roe*, 425 F.3d 654, 661-662 (9th Cir. 2005), the Ninth
19  Circuit held that "the application of 'extraordinary circumstances' does not comport
20  with the 'good cause' standard prescribed by *Rhines*."

21       In *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008), the Ninth
22  Circuit held that a petitioner who was "under the impression" that his counsel had
23  exhausted all claims before proceeding to federal court could not show good cause
24  under *Rhines*.  A claimed lack of knowledge that a claim was not exhausted would
25  allow "virtually every habeas petitioner" to "secure a stay" and therefore "run afoul"
26  of *Rhines.  Id.*

In *Blake v. Baker*, 745 F.3d 977, 980-981 (9th Cir. 2014), the Ninth Circuit noted that "there is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust."   The court determined that:

> good cause is the equitable component of the *Rhines* test.  It ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court.  As such, good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure.

*Blake v. Baker*, 745 F.3d at 982.

**Respondent Relies on Unpublished District Court Decisions to Challenge Garcia's Good Cause Showing**

As noted above, Respondent argues that Garcia cannot show good cause to stay and abey his federal petition so he can exhaust his claims under *People v. Chiu*, 59 Cal.4th 155 (2014) because this decision came down on June 2, 2014, a mere three months before Garcia filed his exhaustion petition in the California Supreme Court on September 29, 2014.  (CR 42 at 5-6.)  Respondent contends that codefendants Esparza and Bernardino are in a different posture because their exhaustion petitions were disposed of before *Chiu* was decided. (CR 42 at 6, n.5.)

As to ground two, which Garcia seeks now to exhaust under *Chiu*, Respondent states that he is "generally averring" "total ignorance of habeas law" which is not good cause under *Rhines*.  (CR 42 at 5.)  Respondent relies on three unpublished decisions from the Southern District of California to argue that lack of legal knowledge, illiteracy, and self-representation do not constitute good cause.  As none of these decisions has any precedential value, they merit little discussion. Furthermore, they are wrong.

For example, *Barno v. Hernandez*, 2009 U.S. Dist. LEXIS 69841 (S.D. Cal. 2009) relies on *Hughes v. State Bd. of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) as holding that illiteracy does not establish good cause. *Hughes*, however, had

nothing to do with the stay and abey procedure, but rather procedural default.  In fact, the Eastern District of California took issue with the Attorney General's reliance on *Hughes* as holding that illiteracy does not establish good cause under *Rhines,* because procedural default has a more stringent standard.  *Murray v. Cate*, 2010 U.S. Dist. LEXIS 100966 (E.D. Cal. 2010).

**Ground Two is Meritorious**

*People v. Chiu*, 59 Cal.4th at 159, held that "an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine.  Rather, his or her liability for that crime must be based on direct aiding and abetting principles."  In Garcia's case, he was convicted of first degree murder after the court instructed the jury on five different theories of vicarious liability.

Respondent asserts that Garcia was the ringleader, the actual shooter, and used a gun he burglarized from a residence. (CR 42 at 7.)  However, even the prosecutor did not argue that Garcia was the actual shooter and the jury did not make any findings as to who was a principal and who was an aider and abettor.  As Garcia argued on appeal, the natural and probable consequences instruction as well as the other instructions on vicarious liability allowed the jury to return a guilty verdict without finding all the elements of the offense beyond a reasonable doubt.  (CR 24 at 7-12.)  Given that the jury was instructed on these legally incorrect theories of guilt and it cannot be determined that the verdict was based on a valid ground, reversal would be required. *Chiu*, 59 Cal.4th at 167.

Respondent also contends that Foust was an "eyewitness" to these events. (CR 42 at 7.) But that is wishful thinking.  Foust's credibility was wanting as he changed his story numerous times. Significantly however, by his own testimony he in no uncertain terms an accomplice.  Although he claimed that he drove behind the Honda Prelude with Ramirez in the trunk out of fear, he also admitted that he thereafter took Garcia and Esparza to his home in Arizona; that

1   Garcia came to visit him there again; and the two men drove to Hollywood together
2   to socialize.

3         Last but not least, the forensic evidence implicates Esparza and
4   Bernardino, but not Garcia.

5   **Grounds Three through Five Are No Impediment to the Stay and**
6   **Abeyance**

7         Respondent asserts that a stay is unwarranted because grounds three
8   through five are "plainly meritless." (CR 42 at 6.)  As to ground three, alleging that
9   scent pads would have shown he was never in the car, he failed to show this was
10  anything other than an ordinary state law evidentiary ruling.  (CR 42 at 6, citing
11  *Estelle v. McGuire*, 502 U.S. 62, 73 (1991).

12        Respondent also contends that Garcia cannot show exclusion of the
13  proffered evidence would have a substantial and injurious effect or influence in
14  determining the jury's verdict. (CR 42 at 7, citing *Brecht v. Abrahamson*, 507 U.S.
15  619, 623 (1993).

16        As to ground four, Respondent notes that Garcia's trial counsel wanted
17  to cross-examine Olivas (the purported lookout in the burglary of the gun), about an
18  incident three months after the burglary, when Marco Ibrahim used the gun to shoot
19  someone.  Ibrahim tossed the gun after the shooting but police were unable to find
20  it in the location he said it was thrown.  That shooting was also gang related.  The
21  trial court ruled that the proffer was not reliable and in any event, prejudicial gang
22  evidence would come in if the testimony were allowed.  (CR 42 at 8-9.)

23        Respondent also contends that because grounds three and four are
24  meritless, ground five "is no less so." (CR 42 at 9.)

25        Notably, Respondent does not contend that ground one is meritless.
26  Should this Court grant Garcia's request to stay and abey in order to exhaust the *Chiu*
27  claim as to ground two, if it is necessary to return to federal court, he may decide to
28  delete grounds three through five.  At this juncture, however, it cannot be said

whether further briefing would shore up these claims or whether Garcia would persist in asserting them.

### CONCLUSION

For the foregoing reasons, Garcia's request to stay and abey the federal petition in order to return to the California Supreme Court to exhaust ground two under *People v. Chiu*, 59 Cal.4th 155, should be granted.

In the alternative, this Court should grant a continuance, authorizing counsel to visit Garcia at Calipatria  (with attendant travel expenses) and order discovery concerning (but not limited to) the materials available at the law library at Calipatria; when, if ever the *Chiu* decision was placed in the library and who would have access to it; how often and for how long law library access was permitted; law library visitation logs; and the lockdowns and seizures of legal files from inmates at Calipatria during the relevant time period.   Depending on the discovery, an evidentiary hearing may be warranted.

Date: February 1, 2015    Respectfully submitted,

/s/ verna wefald

VERNA WEFALD

Attorney for Petitioner Jaime Garcia

DECLARATION OF VERNA WEFALD

I, Verna Wefald, hereby declare the following:

1.  I was appointed by this court to represent Petitioner Jaime Garcia to file a reply to Respondent's opposition to his motion to stay and abey.  In my communication with Mr. Garcia, it is clear to me that he is illiterate.  He requires the assistance of other inmates not just to draft legal pleadings but also to write letters to his counsel.  The letters I have received are in different handwriting.

2.  I have more than 25 years experience litigating habeas corpus petitions in the California state courts (at all levels), the federal district court, and the Ninth Circuit.   In one case, *James v. Pliler*, 269 F.3d 1124 (9th Cir. 2001) (pro se prisoner filing mixed petition must be told he can delete the unexhausted claims), on remand to the district court, there was a critical issue in determining whether a notice of appeal was timely filed.  I was provided discovery by the Attorney General which showed that the Susanville state prison where Mr. James was incarcerated only contained legal materials about federal habeas corpus from the 1960s.

3.  That the law libraries in the California state prisons are woefully inadequate is well known.  The assertion that Calipatria State Prison may not even have had a copy of the decision in *People v. Chiu*, 59 Cal.4th 155 (2014) in September 2014, (or ever) is made in good faith.  Moreover, as Calipatria is notorious for inmate strife and lockdowns, it would not be unusual for an illiterate inmate such as Mr. Garcia to have great difficulty in finding someone to confer with and/or help him to draft his legal pleadings.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of February 2014, at Pasasena, California.

/s/ verna wefald

_____
VERNA WEFALD, Declarant

**CERTIFICATE OF SERVICE**

I, Verna Wefald, certify that the above document was served on:

Michael Lehman
Deputy Attorney General
300 S. Spring St.
Los Angeles, CA 90013

by the district court electronic filing system:

and on:

Jaime Garcia
AG9773
D-4-140
P.O. Box 5007
Calipatria, CA 92233

by first class mail postage prepaid.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of February 2016, at Pasadena, California.

/s/ verna wefald

VERNA WEFALD, Declarant